UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21038-CIV-O'SULLIVAN

[CONSENT]

ERNESTO ALONSO MEJIA RODRIGUEZ,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

     Defendants.

_____/

## ORDER[1]

THIS MATTER is before the Court on the Plaintiff's Motion for Summary

Judgment and Incorporated Memorandum of Law (DE# 32, 9/20/18) and the

Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Defendants'

Cross Motion for Summary Judgment (DE# 33, 10/11/18).

## BACKGROUND

On September 20, 2018, Ernesto Alonso Mejia Rodriguez (hereinafter "plaintiff")

---

[1] On August 29, 2018, the parties consented to magistrate judge jurisdiction for
all further proceedings in this case. See Notice of Right to Consent to Disposition of a
Civil Case by a United States Magistrate Judge - Consent to Exercise of Jurisdiction by
a United States Magistrate Judge (DE# 40, 11/28/18). In accordance with 28 U.S.C. §
636(b), this matter was referred to the undersigned by the Honorable Joan A. Lenard for
all further proceedings including the entry of final judgment. See Paperless Order
Referring Case (DE# 31, 8/29/18).

filed a motion for summary judgment. See Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 32, 9/20/18) (hereinafter "Plaintiff's Motion"). The plaintiff also filed a statement of undisputed facts. See Plaintiff's Notice of Filing Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment (DE# 39, 11/28/18) (hereinafter "SOF").[2]

On October 11, 2018, the United States Department of Homeland Security and the United States Citizenship and Immigration Services (collectively "defendants") filed their response in opposition to the Plaintiff's Motion which included a cross-motion for summary judgment. See Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment (DE# 33, 10/11/18) (hereinafter "Defendants' Motion"). Attached to the Defendants' Motion was a counter statement of material facts. See Defendants' Counter Statement of Material Facts (DE# 33-1, 10/11/18) (hereinafter "RSOF").

On November 28, 2018, the plaintiff filed his response in opposition to the Defendants' Motion and his response in opposition to the defendants' RSOF. See Plaintiff's Response to Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Plaintiff's Response to Defendants' Cross-Motion for Summary Judgment (DE# 38, 11/28/18) (hereinafter "Plaintiff's Response"); Plaintiff's Response to Defendants' Counterstatement of Material Facts (DE# 38-1, 11/28/19) (hereinafter

---

[2] The plaintiff's statement of undisputed facts was initially included in the body of Plaintiff's Motion (DE# 32 at 4-10) and did not "[c]onsist of separately numbered paragraphs" as required by S.D. Fla. Local Rule 56.1(a). The plaintiff corrected this oversight by filing Plaintiff's Notice of Filing Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment (DE# 39, 11/28/18).

"Reply SOF").

The defendants filed their reply on December 21, 2018. <u>See</u> Defendants' Reply in Opposition to Plaintiff's Response to Defendants' Opposition to Plaintiff's Motion for Summary Judgment (DE# 43, 12/21/18) (hereinafter "Defendants' Reply").

This matter is ripe for adjudication.

## FACTS[3]

### A.   Statutory Overview

Under 8 U.S.C. § 1254a, the United States Attorney General may designate any foreign state or part of a foreign state for Temporary Protected Status (hereinafter "TPS") if "certain conditions exist . . . including the occurrence of an environmental disaster, that results 'in a substantial, but temporary, disruption of living conditions in the area affected.'" <u>Mejia Rodriguez v. U.S. Dep't of Homeland Sec.</u>, 562 F.3d 1137, 1140 (11th Cir. 2009) (quoting 8 U.S.C. § 1254a(b)(1)(B)(i)). On January 5, 1999, the United States Attorney General designated Honduras under the TPS program after Hurricane Mitch devastated that country. <u>See</u> "Designation of Honduras Under the Temporary Protected Status Program," 64 Fed. Reg. 524-26, 1999 WL 1703 (1999). From January 2009 through July 2018, the Attorney General and, later, the Secretary of Homeland

---

[3] The facts summarized herein are those facts which the Court deems relevant to the adjudication of the cross motions for summary judgment. In this Order, the Court cites to the certified administrative record or "CAR." The 2014 Certified Administrative Record was filed at Docket Entry 28 and will be cited as "2014 CAR at ___." The 2018 Certified Administrative Record was filed at Docket Entry 29 and will be cited as "2018 CAR at ___."

Security[4] continuously extended TPS for Honduras. RSOF at ¶ 56; Reply SOF at ¶ 56.

To receive TPS, a person must apply and meet certain eligibility requirements. A person "who is a national of a designated country must (1) be continuously present in the United States since the effective date of the most recent designation of that country; (2) continuously reside in the United States from the date that the Secretary designates; (3) be admissible as an immigrant, subject to certain exceptions; and (4) register during an appropriate registration period, 'to the extent and in a manner which the [Secretary of Homeland Security] establishes.'" Villegas-Menjivar v. U.S. Atty. Gen., 358 F. App'x 105, 107 (11th Cir. 2009) (quoting 8 U.S.C. § 244(c)(1)(A)(i)-(iv), 8 U.S.C. § 1254a(c)(1)(A)(i)-(iv)). Once a person has been granted TPS, he or she must periodically re-register for TPS. See 8 U.S.C. § 1254a(c)(3)(C); 8 C.F.R. § 244.17(a).

TPS may be withdrawn if the person "was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status." 8 C.F.R. 244.14(a)(1). Section 244(c)(2)(B) of the Immigration and Nationality Act (hereinafter "INA" or "Act") states, in part: "An alien shall not be eligible for [TPS] under this section if the [Secretary of Homeland Security] finds that -- (i) the alien has been convicted of any felony or 2 or more misdemeanors committed in the United States. . . ." 8 U.S.C. § 1254a(c)(2)(B).

---

[4] "The authority to designate countries and administer the TPS program was transferred from the Attorney General to the Secretary of Homeland Security in 2003, with the formation of the Department of Homeland Security." Macauley v. Unknown U.S. Fed. Gov't Agency or Agencies, No. 1:16-CV-1347-TWT, 2017 WL 3397372, at *1 n.5 (N.D. Ga. Aug. 8, 2017) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002)).

The INA does not define the term "misdemeanor." However, the Department of Homeland Security has promulgated 8 C.F.R. § 244.1 which defines the term "misdemeanor" based on the offense's possible term of imprisonment:

> Misdemeanor means a crime committed in the United States, either:
>
> > (1) Punishable by imprisonment for a term of one year or less, regardless of the term such alien actually served, if any, or
> >
> > (2) A crime treated as a misdemeanor under the term "felony" of this section.
>
> For purposes of this definition, any crime punishable by imprisonment for a maximum term of five days or less shall not be considered a felony or misdemeanor.

8 C.F.R. § 244.1.

## B.  The Grant of TPS to the Plaintiff

The plaintiff is a Honduran national who first applied for TPS on June 22 or 30, 1999.[5] 2018 CAR at 57-60. As part of his application, the plaintiff disclosed his criminal history, including the following arrests: (1) an August 6, 1985 arrest for refusal to pay fare at a Miami MetroRail station resulting in an adjudication of "nolo-contendere with conviction and 30 hours of community service rendered" and (2) a January 8, 1986 arrest for "(a) possession of controlled substance (suspected of possessing approximately 1 gram of marijuana, case number: 86-50762(I))" and "(b) possession of

---

[5] The parties dispute the date the plaintiff first applied for TPS. The defendants state that the plaintiff applied for TPS on June 22, 1999. RSOF at ¶ 1. The application submitted by the plaintiff contains a handwritten date next to the signature line which appears to be "6/30/99." 2018 CAR at 60. In any event, the discrepancy concerning the date the plaintiff first applied for TPS is not material to the adjudication of the instant motions.

a suspended drivers [sic] license,[6]  case number 86-50762(II)" wherein the plaintiff pled

guilty[7] and was sentenced to time served. Id. at 69 (footnote added). The plaintiff

disclosed other arrests which are not relevant to the instant case.[8]

On November 23, 1999, the plaintiff was granted TPS, valid from November 22,

1999 through July 5, 2000. 2018 CAR at 23. The plaintiff successfully re-registered for

TPS and retained his TPS through 2003. RSOF at ¶ 59; Reply SOF at ¶ 59.

## C.    The Withdrawal of the Plaintiff's TPS

On December 24, 2004, the plaintiff filed an application for TPS re-registration.

RSOF at ¶ 60; Reply SOF at ¶ 60. On March 30, 2006, the United States Citizenship

and Immigration Services (hereinafter "USCIS") issued a Notice of Decision denying the

plaintiff's application and withdrawing the plaintiff's TPS, finding that the plaintiff "ha[d]

not maintained eligibility for TPS." 2014 CAR at 246-47. Specifically, the Notice of

Decision found that the plaintiff was ineligible for TPS because he had been convicted

---

[6] The record sometimes refers to this charge as driving with a suspended license. See, e.g., 2014 CAR at 261. This discrepancy does not appear to be material.

[7] The parties dispute whether the 1986 arrest resulted in one or two convictions for TPS purposes. The Court will address this dispute in the "Analysis" section of this Order.

[8] These additional arrests occurred on April 13, 1986, April 9, 1988, January 28, 1989 and November 15, 1992. 2018 CAR at 69. The April 13, 1986 arrest resulted in "orders withholding adjudication, imposing one year of youthful offender incarceration and two years of community control." Id. at 74. However, those orders were later "vacated, set aside and held for naught" pursuant to a petition for writ of error coram nobis filed by the plaintiff. Id. Additionally, "[o]n [the plaintiff]'s motions, the Miami-Dade County Circuit Court vacated the judgments entered on the 1988 Charges, the 1989 Charges, and the 1992 Charges, because [the plaintiff's] no contest pleas in those cases had been involuntary for the court's failure to inform him that the plea could subject him to deportation." SOF at ¶ 15; RSOF at ¶ 15; 2018 CAR at 110-19.

of a felony or two or more misdemeanor offenses, and listed the following convictions:

> On January 8, 1986, you were convicted of the following charge(s):
>
>> 1. Possession of Controlled Substance under the Florida Statutes
>>
>> 2. Possession of Suspended Drivers [sic] License under the Florida Statutes.
>
> On April 9, 1988, you were convicted of the following charge(s):
>
>> Driving While License Suspended, 322.34 under the Florida Statutes
>
> On November 15, 1992, you were convicted of the following charge(s):
>
>> Driving Under the Influence, 316.193 under the Florida Statutes

Id. at 246 (footnote added).

**D.     Administrative Appeal**

On April 24, 2006, the plaintiff appealed the withdrawal of his TPS to the Administrative Appeals Office (hereinafter "AAO"). 2014 CAR at 249. On appeal, the plaintiff argued that "the convictions cited in the Notice of Decision had been invalidated on constitutional grounds and accordingly could not be considered in determining whether to grant TPS, that the 1986 Charges [were] not a conviction for immigration purposes, and that only the 1985 [refusal to pay fare] was an actual conviction." SOF at ¶ 19; RSOF ¶ 19; 2014 CAR at 251-64.

On November 19, 2007, the AAO issued its decision affirming the withdrawal of the plaintiff's TPS. 2014 CAR at 266-70. The AAO listed the following offenses in the plaintiff's criminal record:

(1) On September 5, 1985, the [plaintiff] was convicted of "refusal to pay fare" under Case Number M85-70237 by a Judge in the Eleventh Judicial Court of Florida in and for Dade County, a misdemeanor.

(2) On June 3, 1986, the [plaintiff] was convicted of marijuana possession under case Number M86-50762(I) and driving with a suspended driver's license under Case Number M86-50762(II) by a Judge in the Eleventh Judicial Court of Florida in and for Dade County, both misdemeanors.

(3) On July 24, 1986, under Case Number 86-10360 B, a Judge in the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County noted that the [plaintiff] had been found guilty of the charge of trafficking in cocaine (a felony) by the court upon the entry of a nolo contend[e]re plea. The Judge issued an Order Withholding Adjudication committing the [plaintiff] to the custody of the Florida Department of Corrections for a three year period as a youthful-offender under the Florida Statutes. The Judge stipulated that not more than the first year of the sentence should be served by imprisonment at a State Correctional Facility for Youthful Offenders, and not more than the following two years should be served in a Community Control Program as defined by Florida Statute.

On August 11, 1997, under Case Number 86-10360 B, a Judge in Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County issued an Order Granting Petition for Writ be [sic] granted and that the orders withholding adjudication, imposing one year of youthful offender incarceration and two years of community control, entered in the cause on July 24, 1986, be vacated, set aside and held for naught.

On August 18, 1997, under Case Number 86-10360 B, a Judge in the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County issued an Order to Reseal Criminal History Record. The Judge noted that the [plaintiff]'s criminal history record had been previously sealed by order of the Court entered December 6, 1990. The Court granted the [plaintiff]'s oral motion to open the sealed record for the limited purpose of allowing him to present his petition for writ of error. The Judge then ordered that the [plaintiff]'s criminal history record shall be sealed pursuant to the terms, conditions, and provisions of the Court's order of December 6, 1990, which order is expressly incorporated herein, with the exception that the record of this case, as set forth by this order, shall reflect that the orders withholding adjudication, imposing one year of youthful offender incarceration and two years of community control, entered in this cause on July 24, 1986, has been vacated by the court and the State has announced a nolle prosequi of all charges in this case.

8

(4) On June 22, 1988, the [plaintiff] was convicted under Case Number 74594CC of driving while his license was suspended by a Judge in the County Court in and for Dade County, Florida, a misdemeanor.

(5) On March 22, 1989, the [plaintiff] was convicted of resisting arrest without violence under Case Number M89-52684 by a Judge in the Eleventh Judicial Court of Florida in and for Dade County, a misdemeanor.

(6) On June 22, 1993, the [plaintiff] was convicted of driving under the influence under Case Number 49745WD by a Judge in the County Court in and for Dade County, Florida, a misdemeanor.

Id. at 268-70.

The AAO noted that "the [plaintiff had] submit[ted] court orders vacating charges detailed in Nos. 3 and 5 above." 2014 CAR at 270. The AAO further noted that because "these orders vacate[d] the convictions on their merits, the [plaintiff was] no longer considered to have been 'convicted' of the offenses detailed in Nos. 3 and 5 above." Id. (citations omitted). However, the AAO determined that "the [plaintiff] remain[ed] ineligible for TPS due to his remaining five misdemeanor convictions detailed in Nos. 1, 2, 4, and 6 above." Id. (citing section 244(o)(2)(B)(i) of the INA and 8 C.F.R. § 244.4(a)).

Additionally, the AAO, sua sponte, raised the plaintiff's "inadmissibility under section 212(a)(2)(A)(i)(II) of the Act due to [the plaintiff's] drug-related conviction in No. 2 above" as an independent ground for the plaintiff's ineligibility for TPS. 2014 CAR at 270.

The AAO also noted, sua sponte, that "the [plaintiff] had provided insufficient evidence to establish his continuous residence and continuous physical presence [in the United States] during the requisite time periods" as required by 8 C.F.R. § 244.2 (b) and (c) and was therefore ineligible for TPS on this ground as well. 2014 CAR at 270.

9

E.   **Judicial Review, Case No. 08-20273-CIV-KING**

On January 31, 2008, the plaintiff filed a complaint in the United States District

Court for the Southern District of Florida, Case No. 08-20273-CIV-KING, seeking

judicial review of the AAO's decision. See Complaint for Declaratory Judgment, 2014

CAR at 277-86. The complaint contained a single count for declaratory relief and

asserted that the "revocation of [the plaintiff's] TPS [was] unlawful and should be set

aside because the determination [was] arbitrary, unsupported by substantial evidence

and unwarranted by the facts." Id. at 285.

On July 24, 2008, this Court dismissed the complaint for lack of jurisdiction. 2014

CAR at 288-89. The order of dismissal noted that this Court "[did] not possess subject

matter jurisdiction over legal and constitutional challenges to the denial of an application

for TPS." Id. at 288 (citations omitted). The order of dismissal further noted that "[i]f [the

plaintiff] so desire[d], he [could] seek review of the USCIS determination in the Eleventh

Circuit Court of Appeals." Id. at 289.

The plaintiff appealed the order of dismissal. On March 16, 2009, the Eleventh

Circuit reversed this Court's order of dismissal, finding that "the district court ha[d]

subject matter jurisdiction under the [Administrative Procedure Act] to review [the

plaintiff]'s claim, and thus, erroneously dismissed his complaint." Mejia Rodriguez v.

U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1146 (11th Cir. 2009) (per curiam).

The case was remanded to this Court. On August 20, 2009, this Court denied the

plaintiff's request for declaratory relief on the merits. See Order Denying Plaintiff's

Request for Declaratory Judgment. 2014 CAR at 298-302. This Court noted that:

> Plaintiff had several criminal charges and convictions, all of which were vacated except **two**, which form[ed] the basis of USCIS's withdrawal of his TPS. The **two** remaining "convictions" are 1) a 1985 charge for failure to pay a Metrorail fare, where Plaintiff was found guilty, adjudication was withheld, and 25 hours of community service were imposed; and 2) a 1986 charge for possession of marijuana and driving with a suspended license, to which he pled guilty and was sentenced to time served.

Id. at 299 (emphasis added).

The plaintiff conceded that the 1985 charge was a "conviction" under the Act, but disputed whether the 1986 charges qualified as a "conviction" under section 1101(a)(48)(A) of the INA. 2014 CAR at 299-300. This Court found that they did:

> Here, Plaintiff's 1986 criminal charges resulted in a formal judgment of guilt. The state criminal court records attached to this docket (DE # 1, p. 54-56) show that Plaintiff was charged with marijuana possession and driving with a suspended license. He pled guilty and was sentence[d] to time served. The state court had before it the police report and probable cause affidavit, detailing Plaintiff's conduct. Thus, the records demonstrate that the state court considered the factual circumstances surrounding Plaintiff's arrest, accepted Plaintiff's guilty plea, adjudicated him guilty, and sentenced him to time served. Further, all of this was set forth in the official court record. This is more than a simple finding of guilt or guilty plea, and it comports with Rule 32's requirements.

Id. This Court concluded that the plaintiff had at least two misdemeanor convictions and was therefore ineligible for TPS. Id. at 301.

The plaintiff appealed this Court's ruling to the Eleventh Circuit. On January 4, 2011, the Eleventh Circuit affirmed this Court's Order. Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 629 F.3d 1223, 1225 (11th Cir. 2011) (per curiam). At issue before the Eleventh Circuit was "whether a guilty plea and a finding of guilt, with a sentence of time served, qualifie[d] as a 'conviction' under 8 U.S.C. § 1101(a)(48)." Id. Under section 1101(a)(48)(A) of the INA, "a 'conviction' can be either (1) a formal judgment of guilt, or

(2) if adjudication of guilt was withheld, a sufficient finding of guilt and the imposition of punishment or restraint on liberty." Id. at 1225-26. The Eleventh Circuit found "that because the state court did not expressly withhold adjudication in the 1986 case, only the first prong of § 1101(a)(48)(A) applie[d] . . . ." Id. 1226. The Eleventh Circuit concluded that the 1986 case met the requirements of the first prong because "the state court accepted [the plaintiff]'s plea, made a 'finding of guilt,' and imposed a sentence of time served." Id. at 1228. The Eleventh Circuit therefore reasoned that "the 1986 case resulted in a conviction for immigration purposes" and "[t]he district court properly denied the motion for declaratory judgment." Id.

**F.     The New York Memo**

In the interim and while the plaintiff's case was pending on appeal, the USCIS issued a policy memorandum on January 17, 2010 concerning certain minor New York traffic infractions and violations. See Memorandum from Donald Neufeld, Associate Director, Service Center Operations, USCIS, and Perry J. Rhew, Chief, Administrative Appeals Office, USCIS, Temporary Protected Status (TPS) adjudications involving New York Traffic infractions or New York violations (January 17, 2010) (hereinafter "New York Memo"), 2014 CAR at 431-34.

The New York Memo addressed certain traffic infractions and violations under New York law: (1) "Traffic Infractions," as defined at N.Y. Penal Law § 10.00(2) (referencing N.Y. VEH. & TRAF. Law § 155); (2) "Violations," as defined at N.Y. Penal Law § 10.00(3) and (3) "[c]ertain minor offenses that are described as 'violations' under certain local New York laws." 2014 CAR at 431. The New York Memo stated, in

12

pertinent part, that:

> [t]he Department has determined that **these New York offenses should not be considered disqualifying misdemeanors for purposes of the TPS statute and regulations**.
>
> Examples of "traffic infractions" include, but are not limited to, driving more than 10 miles over the speed limit and crossing a street at places other than a crosswalk. N.Y. VEH. & TRAF. LAW §§ 1180(f)(1)(ii), 1152. **New York violations include, among others, loitering, trespassing, disorderly conduct, exposure of a person, possession of certain weapons on school grounds, and unlawfully posting advertisements. Numerous local laws, rules, and ordinances within New York are also labeled violations, but not misdemeanors in the local codes.**
>
> Although many New York traffic infractions are punishable by imprisonment of more than five days imprisonment [sic], but not more than one year, they do not satisfy the requirements for a criminal "conviction" and thus, cannot lawfully constitute "misdemeanors" under INA, § 244(c)(2)(B)(i) and 8 C.F.R. part 244.4 Unlike traffic infractions, **New York violations under N.Y. PENAL LAW § 10.00(3) and various local laws could lawfully be characterized as misdemeanors for purposes of TPS eligibility; however, the Department has determined that deeming such New York violations as disqualifying an individual for TPS would be in tension with the humanitarian purpose of the TPS program and would lead to incongruous results.**

Id. at 432 (footnotes omitted; emphasis added). In a footnote, the New York Memo

explains that "New York violations and traffic infractions are not considered 'crimes'

under state law, do not constitute misdemeanors or felonies, and may not be punished

by more than 15 days of imprisonment." Id. at 431 n.1 (citing N.Y. PENAL LAW, §

10.00(2)-(4) and (6); N.Y. VEH. & TRAF. LAW §§ 155, 1800(b)).

## G.     The Florida Memo

On January 21, 2011, the USCIS issued a policy memorandum excluding from

TPS ineligibility certain Florida misdemeanor convictions where a "no jail" or "no

incarceration" certification had been issued. See USCIS Policy Memorandum AFM

Update AD11-21, Temporary Protected Status Adjudications Involving "No Jail" or "No Incarceration" Certifications, and Reminder for Cases Involving Certain Potential Misdemeanors; Revisions to the Adjudicator's Field Manual (AFM) Chapter 38.1(e)(12) (Jan. 21, 2011) (hereinafter "Florida Memo"), 2014 CAR at 316-18. The Florida Memo explained that:

> a Florida "no jail" or "no incarceration" certification, issued pursuant to Rule 3.994 of the Florida Rules of Criminal Procedure, **fundamentally changes the maximum possible sentence for an offense by removing the possibility of incarceration for that offense**. As a result, the Department has further concluded that **an offense with such a certification**, unless withdrawn pursuant to Rule 3.111(b)(1)(C) of the Florida Rules of Criminal Procedure, **does not meet the definition of a misdemeanor under 8 C.F.R. § 244.1 because it would not constitute an offense punishable by imprisonment**.

Id. at 317 (emphasis added).

**H.     Denial of the Plaintiff's Renewed TPS Application**

On August 15 or 16, 2011,[9] the plaintiff reapplied for TPS. 2014 CAR at 324-40.

On December 13, 2011, the USCIS issued the following letter:

> On August 16, 2011, you filed an Application for Employment Authorization (Form I-765) under Title 8, Code of Federal Regulations (8 CFR), Section 274a.12(a)(12). Your eligibility for renewal of [TPS] benefits is based upon the approval or pendency of the initial filing of your Application for Temporary Protected Status (Form I-821) and your continued eligibility under 8 CFR, Section 24-4.

> On March 7, 2006, [USCIS] withdrew your Temporary Protected Status (SRC-99-195-53283). The [AAO] dismissed your appeal of that decision on December 5, 2007. **Since your TPS bas been withdrawn, the Form I-765 filed for TPS re-registration cannot be approved and is denied.**

---

[9] The parties dispute whether the plaintiff applied/reapplied for TPS on August 15 or 16, 2011. See SOF at ¶ 33; RSOF at ¶ 33. This date is not material to the Court's adjudication of the instant motions.

> You submitted an uncertified printout of offenses and dispositions for several charges that you highlighted as "vacated" in March 2001. "If a court vacates an alien's conviction for reasons solely related to rehabilitation or immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings the conviction is not eliminated for immigration purposes." Matter of Pickering, 23 I&N Dec. 621 (BIA 2003). "No effect is given in immigration proceedings to a state action which purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction by operation of a state rehabilitative statute." Matter of Roldan, 22 I&N Dec. 512, (BIA 1999).

2014 CAR at 342 (emphasis added).

On January 10, 2012, the plaintiff filed a Motion to Reopen and/or Motion to Reconsider Denial of Application for Temporary Protected Status. 2014 CAR at 348-56. On May 25, 2012, the USCIS issued a letter granting the plaintiff's request to reopen and reconsider the December 13, 2011 decision, but denying the application for TPS on the merits:

> On January 12, 2012, you filed a motion to reopen and reconsider the denial of your Form I-765, EAC-11-902-91118, which was denied on December 13, 2011. Your motion meets the requirements of 8 CFR 103.5 concerning the proper filing of a motion. Accordingly, the request to Reopen and Reconsider the previous decision is hereby granted.

> The form I-765 which was filed as a re-registration application for Temporary Protected Status (TPS), was denied because you did not establish that you had an approved initial TPS application, Form I-821. **The records of the U.S. Citizenship and Immigration Service (USCIS) show that your initial TPS application, SRC-99-219-53253, was revoked on March 30, 2006, because you were found ineligible for TPS based on two or more misdemeanor convictions.**

> ***

> You contend that TPS was revoked in error, and that you do not have two or more misdemeanor convictions that make you ineligible for TPS.

> In support of your motion, you argue that the two remaining misdemeanor convictions (a 1985 conviction for failure to pay Metrorail fare, a

15

misdemeanor; and a 1986 conviction for illegal possession of controlled substance (marijuana) and driving while license suspended, both misdemeanors) do not meet the definition of conviction as defined by section 101(a)(48)(A) of the Immigration and Nationality Act (INA); which states:

> " ... with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where-

> (iii) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (iv) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

You submitted copies of USCIS policy memoranda to support your argument that the 1985 misdemeanor conviction equates to a "New York Infraction" as discussed in the policy memoranda dated January 17, 2010. You argue that the sentence of "time served" for your 1986 drug possession conviction equates to a "No Jail" or "No Incarceration" definition as outlined in the copy of the USCIS policy memoranda dated January 21, 2011.

Included in the record is a published decision by the U.S. Court of Appeals, Eleventh Circuit dated January 4, 2011 [ ]629 F.3d 1223 (11th Cir. 2011) which stated ". . . the state court accepted Mejia's plea, made a "finding of guilt" and imposed a sentence of ["]time served" for your 1986 conviction for drug possession. The decision further stated[,] "This satisfies 8 USC Section 1101(a)(48)'s definition of a formal judgment of guilt. Accordingly, we conclude that the 1986 case resulted in a conviction for immigration purposes. The district court properly denied the motion for declaratory judgment. AFFIRMED."

**USCIS' definition of conviction was thoroughly reviewed and defended by both the U.S. District Court for the Southern District of Florida, Miami Division, and the U.S. Court of Appeals for the Eleventh Circuit. Both courts independently affirmed that your misdemeanor offenses for 1985 and 1986 are convictions for immigration purposes, and that you are ineligible for TPS based on those convictions.**

You have been convicted of two or more misdemeanors committed in the United States. This renders you ineligible for Temporary Protected Status

16

pursuant to section 244(c)(2)(B)(i) of the Act and Title 8, Code of Federal Regulations, part 244.4.

2014 CAR at 564-65 (emphasis added).

The plaintiff appealed this decision to the AAO. On May 20, 2013, the AAO "rejected" the plaintiff's appeal. 2014 CAR at 27-28. The AAO noted that in the December 13, 2011 letter, "the director denied the current Form I-765, Application for Employment Authorization, because the applicant's TPS had been withdrawn." Id. at 28 (emphasis added). The AAO further noted that the plaintiff "filed a motion to reopen and a motion to reconsider from the denial of the Form I-765" and that the director "granted the motion, and after a complete review of the record, determined that the grounds of denial had not been overcome on motion, and again denied the Form I-765 on May 25, 2012." Id. (emphasis added). The AAO noted that **"[t]he record contain[ed] no evidence that a Form I-821, Application for Temporary Protected Status, was denied on December 13, 2011** or May 25, 2012. [USCIS] records reflect that the Form I-821 (EAC119029117) was administratively closed on January 24, 2012." Id. (emphasis added). Thus, the AAO rejected the appeal because "the AAO has no jurisdiction over applications for employment authorization." Id.[10]

---

[10] In a non-precedential decision dated September 18, 2017, discussed infra, the AAO acknowledged the possibility that this appeal may have been rejected in error:

> Although not completely clear from the record, it appears that we rejected the appeal in error, believing that the Director had denied the Applicant's request for an employment authorization document (over which we have no jurisdiction), and not a re-registration application. That fact, however, has no bearing over our jurisdiction over the current matter.

2018 CAR at 2 n.4. This potential error does not affect the Court's ruling on the instant motions. The AAO subsequently had the opportunity to address the plaintiff's arguments

I.       **Judicial Review, Case No. 13-22771-CIV-MORENO**

On August 1, 2013, the plaintiff filed a complaint for declaratory relief in the United States District Court for the Southern District of Florida, Case No. 13-22771-CIV-MORENO. See Complaint for Declaratory Judgment (DE# 33-21). The complaint sought a declaratory judgment that the USCIS' revocation and refusal to reinstate the plaintiff's TPS was unlawful and should be set aside. Id.

The parties filed cross-motions for summary judgment. On April 9, 2014, this Court denied both motions and remanded the case to USCIS "to correct any flaws in its decision" to deny TPS to the plaintiff. See Order Denying Plaintiffs' [sic] Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment, and Remanding to Agency, 2018 CAR at 282-86. This Court noted that on May 25, 2012, the USCIS had denied the plaintiff application to re-register for TPS:

> finding that the two misdemeanor convictions rendered [the plaintiff] ineligible because the last opinion by the Eleventh Circuit Court of Appeals, . . . [Mejia Rodriguez v. U.S. Dep't of Homeland Security, 629 F.3d 1223 (11th Cir. 2013)], affirmed the District Court's finding that the marijuana and driver's license conviction and sentence to "time served" qualified as a conviction for purposes of [TPS] consideration.

Id. at 284 (footnote omitted). This Court, however, noted that the Eleventh Circuit's opinion did not discuss the New York Memo and could not have considered the Florida Memo, which was issued after the Eleventh Circuit's opinion. Id. at 284-85. This Court noted that "[t]he 'requirement that an agency provide reasoned explanations for its actions,' F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009), [could not] be satisfied without any explanation of the disparate treatment of individuals in New

---

on the merits in the September 18, 2017 decision.

York and Florida" and therefore denied both motions for summary judgment and remanded the case "to [the USCIS] to correct in writing any flaws in its decision to deny [the plaintiff]'s [TPS]." Id. at 286.

**J.      The Ruling on Remand**

Prior to seeking judicial review in Case No. 13-2277-CIV-MORENO, the plaintiff filed another application for TPS on June 3, 2013. See RSOF at ¶ 62; Reply SOF at ¶ 62. According to the record, the June 3, 2013 application was denied in August 2013. See 2018 CAR at 238 (stating "[o]n June 3, 2013, you had also filed another Application for Temporary Protected Status (Form I-821), under section 244 of the [INA] to re-register for TPS benefits and a related Application for Employment Authorization (Form I-765), both of which USCIS denied in August 2013.").

However, and in response to the District Court's April 9, 2014 remand, on May 21, 2014, USCIS provided the plaintiff with notice of its intent to deny the plaintiff's re-registration and an opportunity to submit additional documentation:

> **[USCIS] is notifying you of its intent to deny the re-registration Application for Temporary Protected Status (Form I-821) filed on June 3, 2013**. It appears that you are not eligible for [TPS].
>
> On March 7, 2006, USCIS withdrew your [TPS] Status (SRC-99-219-53283). On December 5, 2007, your appeal of that decision was dismissed by the [AAO]. A second appeal was terminated by the AAO on May 20, 2013. **USCIS is now reconsidering your TPS eligibility on Service motion and pursuant to [the] order of the District Court for the Southern District of Florida dated April 10, 2014.**
>
> ***
>
> You have not provided evidence to establish that the State of Florida has classified any of your offenses as a violation, infraction, or any other offense classification less than a misdemeanor. You have provided no

other evidence to support your claim that under the 2010 USCIS memorandum your convictions should not be found not to be [sic] "misdemeanors" under 8 CFR 244.1. In addition, you have not provided evidence that a "no jail" or "no incarceration" certification was issued pursuant to Rule 3.994 of the Florida Rules of Criminal Procedure.

**Submit any supporting documentation showing that an "Order of No Incarceration" (aka "no jail certification") was issued by the court that adjudicated any of your convictions at issue, or any other documentation that supports your claims that the [New York Memo] or the [Florida Memo] demonstrate that your convictions should not be considered misdemeanors for TPS purposes.**

\*\*\*

If you do not respond to this notice with the requested information by June 23, 2014, it will be deemed an abandonment of your re-registration application and may result in the denial of your application.

A final decision will not be made on your application/petition for thirty-three (33) days. **During that time you may submit evidence to overcome the noted reasons for denial.** If a response is not received on or before June 23, 2014, a final decision will be made based on the evidence currently in the record.

2018 CAR at 269-71 (emphasis added). On June 10, 2014, the plaintiff submitted a letter and attached additional documents. Id. at 276-94.

On July 17, 2015, the USCIS denied the plaintiff's June 3, 2013 application. 2018 CAR at 236-46. The decision stated that it was "made in accordance with the Order of the United States District Court for the Southern District of Florida, dated April 9, 2014, remanding [the plaintiff's] case to USCIS for reconsideration." Id. at 236 (footnote omitted). In its decision, the USCIS considered both the New York Memo and the Florida Memo and determined that the memoranda did not apply to the plaintiff's 1985 and 1986 convictions. Thus, the plaintiff remained ineligible for TPS "based on [the plaintiff's] three (3) misdemeanor convictions in Florida for Refusal to Pay a Metro

20

Transit Fare (in 1985), possession of marijuana (in 1986), and possession of a suspended driver['s] license (in 1986)." Id. The USCIS also determined that the plaintiff was ineligible for TPS because his 1986 possession of marijuana conviction rendered him not admissible as an immigrant: "Due to your conviction for a drug offense in 1986, you are inadmissible to the United States under section 212(a)(2)(A)(i)(II) of the Act. This ground of inadmissibility may not be waived for TPS applicants." Id. at 245 (citing INA § 244(c)(2)(A)(iii)(I)).

The plaintiff appealed the decision. On September 18, 2017, the AAO entered a non-precedential decision finding that the plaintiff had not overcome the bases for the denial of his TPS. 2018 CAR at 1-15. The AAO found that the plaintiff's 1985 and 1986 convictions constituted three convictions, these convictions were "misdemeanors" as defined by 8 C.F.R. § 244.1, the 1985 conviction for refusal to pay fare did not "qualify for treatment under the New York Memo[ ]," the plaintiff had failed to produce the required no jail certification for any of his convictions as required under the Florida Memo and the plaintiff was otherwise "disqualified for TPS based on his drug-related inadmissibility."[11] Id. at 14-15.

The AAO determined that the 1985 charge for refusal to pay fare resulted in one conviction and the 1986 charges for possession of a suspended driver's license and

---

[11] The AAO did "withdraw" USCIS' finding that the plaintiff's drug-related inadmissibility could not be waived, noting that "a waiver under section 244(c)(2)(A)(ii) of the Act would be available to [the plaintiff]." 2018 CAR at 12,14. However, the AAO also noted that the plaintiff had not applied for a waiver and therefore remained ineligible for TPS on this ground, in addition to his ineligibility based on his three misdemeanor convictions. Id. at 14.

possession of marijuana resulted in two convictions. 2018 CAR at 4-5. Thus, the plaintiff had a total of three misdemeanor convictions. Id. The plaintiff argued that the two 1986 convictions should count as one conviction because they occurred during a single scheme. Section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), distinguishes between convictions arising from a single scheme of criminal misconduct and those arising from two or more independent schemes. However, the AAO explained that the "single scheme" determination applied only to removal proceedings and did not apply to TPS. Id. at 5.

The AAO also determined that the New York Memo and the Florida Memo did not apply to the plaintiff's convictions. 2018 CAR at 6-12. With respect to the New York Memo, the AAO noted that New York Memo considered both the state's classification of an offense and the punishment prescribed. Id. at 7. The AAO further noted that in Florida, the punishment prescribed for a county ordinance violation – up to 60 days imprisonment, a fine not exceeding $500 or both – was the same as a second degree misdemeanor. Id. at 9. Because the punishment was the same, the AAO "conclude[d] that the State [of Florida] neither classifie[d] nor consider[ed] ordinance violations as less severe than those offenses it ha[d] designated as misdemeanors (even if those misdemeanors are in the second degree)." Id. Thus, the AAO concluded that the plaintiff had not established that his 1985 conviction for refusal to pay fare "merit[ed] exclusion from the TPS misdemeanor definition under the rubric of the New York memorandum." Id.

The AAO also determined that the Florida Memo did not apply to the plaintiff's

22

1985 and 1986 convictions. 2018 CAR at 9-12. The Florida Memo required the issuance of a "no jail" or "no incarceration" certification pursuant to Fla. R. Crim. P. 3.994. Id. at 9. The underlying rationale of the Florida Memo is that if such a certification is issued, "[the] offense cannot be considered a misdemeanor because such a certification eliminates any possible sentence of incarceration." Id. The AAO acknowledged that "it [was] unclear whether there was any sort of no-jail certification procedure available at the time of the [plaintiff's] convictions in 1985 and 1986." Id. The AAO reasoned that "[i]f there was no process for obtaining some form of 'no jail certification' that took imprisonment out of the realm of possible sentences in 1985 and 1986, then the Florida [Memo] simply [did] not apply to offenses committed at that time for purposes of TPS." Id. at 10. Alternatively, assuming that such a procedure existed at the time, the AAO noted that the plaintiff had failed to provide any "evidence that the trial judge employed such a procedure in connection with the [plaintiff]'s 1985 and 1986 charges." Id. The AAO rejected the plaintiff's argument that because he was sentenced to credit for time served, he could not have been sentenced to a term of incarceration. Id. at 11 (noting that "it does not follow that a sentence to time served is any indication that additional incarceration was not within a court's powers.").

Lastly, the AAO concluded that the plaintiff was not eligible for TPS because the plaintiff's 1986 conviction for possession of marijuana rendered him inadmissible. 2018 CAR at 12-14. The AAO explained that "an applicant is only eligible for TPS if, amongst other requirements, he is admissible to the United States as an immigrant." Id. at 12. "[B]ecause the [plaintiff] was convicted of possession of less than 20 grams of

23

marijuana in violation of section 893.13(f) of the Florida Statutes," he was inadmissible under section 1182(a)(2)(A)(i)(II) of the INA for having been convicted of a controlled substance offense. While the AAO determined that "a waiver under section 244(c)(2)(A)(ii) of the Act" was available to the plaintiff, it also noted the plaintiff had not applied for such a waiver. Id. at 14. Therefore, the plaintiff remained inadmissible on this ground. Id.

## K.   The Instant Action

On March 9, 2018, the plaintiff filed a motion in Case No. 13-22771-CIV-MORENO seeking leave to amend the complaint in light of the AAO's September 18, 2017 decision. SOF at ¶ 51; RSOF at ¶ 51. On March 16, 2019, this Court denied the plaintiff's motion stating that the plaintiff "should properly file his amended complaint in a new lawsuit." Id. at ¶ 52.

On March 19, 2018, the plaintiff initiated the instant action by filing a complaint for declaratory relief. See Complaint for Declaratory Judgment (DE# 1, 3/19/18). The plaintiff's four-count complaint seeks the following declaratory relief:

> (i) a declaratory judgment that Mr. Mejia's 1986 offenses from the same proceeding are one conviction;
>
> (ii) a declaratory judgment that a violation of a county ordinance is not a . . . misdemeanor, and therefore cannot be treated as such for TPS-eligibility consideration;
>
> (iii) a declaratory judgment that prior to the enactment of rule 3.994 of the Florida Rules of Civil Procedure, effective January 1, 2003, when a Florida court did not impose a sentence of imprisonment upon a defendant without counsel, it effectively issued a "no-jail" certification;
>
> (iv) a declaratory judgment declaring Mr. Mejia has not failed to maintain his eligibility for TPS because he has not been convicted of two misdemeanors [and]

24

(v) a declaratory judgment that Mr. Mejia is entitled to be treated as eligible for TPS by the Department and declaring the Department's refusal to renew Mr. Mejia's TPS [was] unlawful under 5 U.S.C. § 706.

Id. at 13-14.

The parties subsequently filed the instant cross-motions for summary judgment.

## STANDARD OF REVIEW

The plaintiff brings his claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. To obtain relief under the APA, the plaintiff must establish that the defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"[T]he 'arbitrary and capricious' standard . . . 'provides the reviewing court with very limited discretion to reverse an agency decision.'" Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir. 2009) (quoting City of Oxford v. FAA, 428 F.3d 1346, 1351 (11th Cir. 2005)). Under this standard, the Court must give the agency action great deference. Preserve Endangered Areas of Cobb's History ("PEACH") v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1246 (11th Cir. 1996).

The Supreme Court has noted that:

The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' In reviewing that explanation, we must 'consider whether the decision was based on a consideration of the relevant facts and whether there has been a clear error in judgment.' Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citations omitted). "Deference to the agency 'is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations.'" Scheerer v. U.S. Atty. Gen., 513 F.3d 1244, 1250 (11th Cir. 2008) (quoting INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999)).

The parties have filed cross-motions for summary judgment. "The summary judgment procedure is particularly appropriate in cases in which the court is asked to review . . . a decision of a federal administrative agency." Florida Fruit & Vegetable Growers Ass'n v. Brock, 771 F.2d 1455, 1459 (11th Cir. 1983) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2733, Vol. 10A at 366 (1983)). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "However, even in the context of summary judgment, an agency action is entitled to great deference." PEACH, 87 F.3d at 1246 (11th Cir. 1996).

In an APA case, judicial review is based on an administrative record provided by the defendant agency to the Court. PEACH, 87 F.3d at 1246 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)). As both the plaintiff and the defendants have filed cross-motions for summary judgment and the Court has been provided with an administrative record, this matter is ripe for adjudication.

## **ANALYSIS**

At issue in the instant case is the AAO's determination that the plaintiff is ineligible for TPS. As noted above, in a non-precedential decision issued on September 18, 2017, the AAO determined that the plaintiff was ineligible for TPS because: (1) the plaintiff had three remaining misdemeanor convictions, (2) the New York Memo and the Florida Memo did not apply to the three misdemeanor convictions and (3) the plaintiff was "disqualified for TPS based on his drug-related inadmissibility" for which the plaintiff had not obtained a waiver. 2018 CAR at 1-15.

In his motion for summary judgment, the plaintiff argues that: (1) the 1986 charges resulted in one conviction, not two convictions, for TPS purposes; (2) the Florida Memo bars the defendants from considering the 1986 conviction(s) for possession of a suspended driver's license and possession of marijuana and (3) the New York Memo bars the defendants from considering the 1985 conviction for refusal to pay fare. See Plaintiff's Motion.

The defendants argue that that the AAO correctly determined that the plaintiff was ineligible to TPS for the reasons discussed in the September 18, 2017 non-precedential decision. Defendants' Motion at 2. The defendants also argue that the plaintiff has waived any challenge to the AAO's determination that the plaintiff was ineligible for TPS due to his drug-related inadmissibility because the plaintiff has failed to challenge this inadmissibility bar. Id. at 20.

The Court will address the parties' arguments below.

27

**A.**   **Absent the New York Memo and/or the Florida Memo, the 1985 and 1986 Charges Constitute Misdemeanor Convictions for TPS Purposes**

At the outset, the Court finds that, in the absence of the New York Memo and the Florida Memo, the plaintiff's 1985 and 1986 convictions constitute misdemeanor convictions for TPS purposes. Irrespective of whether the 1986 charges resulted in one conviction or two convictions,[12] the Eleventh Circuit previously determined that the 1986 charges qualify as a conviction. Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 629 F.3d 1223, 1228 (11th Cir. 2011) (stating "we conclude that the 1986 case resulted in a conviction for immigration purposes"). Moreover, the plaintiff, in 08-20273-CIV-KING, conceded that the 1985 conviction for refusal to pay fare was a conviction for TPS purposes. See 2014 CAR at 299-300 (noting that "Plaintiff concede[d] that the 1985 charges [sic] for failure to pay a Metrorail fare qualify as a 'conviction' under the statute . . . ."). On appeal, the Eleventh Circuit also noted the plaintiff's concession concerning the 1985 charge. Mejia Rodriguez, 629 F.3d at 1225 (stating "[t]he remaining convictions on which the [US]CIS relied were a 1985 turnstile-jumping conviction, **which Mejia concedes is a conviction under § 1101(a)(48)**, and the 1986 'conviction' at issue here.") (emphasis added).

In sum, the parties' lengthy litigation history has established that the 1985 and 1986 charges constitute misdemeanor convictions for purposes of TPS eligibility: the plaintiff conceded that the 1985 charge was a conviction and the Eleventh Circuit ruled

---

[12] The plaintiff seeks to apply the doctrines of judicial estoppel and law-of-the-case to the question of whether the 1986 charges resulted in one or two convictions. See Plaintiff's Motion at 15-16. The Court will address these arguments separately.

that the 1986 charges resulted in a conviction. Of course, the plaintiff is not prohibited

from arguing that under the New York Memo and/or the Florida Memo, these

misdemeanor convictions should not be considered for purposes of determining TPS

eligibility. Unlike the issue of whether the 1985 and 1986 charges resulted in convictions

for TPS purposes, the parties did not litigate the applicability of the New York Memo and

the Florida Memo in any prior judicial proceeding.

Alternatively, even if the parties' prior litigation did not establish that the 1985 and

1986 convictions qualify as "convictions" for TPS purposes, these offenses meet the

regulatory definition of a misdemeanor in 8 C.F.R. § 244.1. The term "misdemeanor" is

not defined by the INA. However, misdemeanors are defined in 8 C.F.R. § 244.1 to

include those offenses "[p]unishable by imprisonment for a term of one year or less,

regardless of the term . . . actually served," but do not include "any crime punishable by

imprisonment for a maximum term of five days or less . . . ." Id.

The defendants argue that "[t]he regulation at 8 C.F.R. § 244.1 should be

accorded deference under Chevron [U.S.A. Inc. v. Natural Resources Defense Council,

467 U.S. 837 (1984)], as the INA does not define [the term] misdemeanor for federal

immigration purposes." Defendants' Motion at 8 n.6. Under Chevron, regulations

promulgated pursuant to an express delegation of legislative authority, are to be given

controlling weight unless found to be arbitrary, capricious, or contrary to statute. 467

U.S. at 843-44. The plaintiff does not address Chevron deference in his briefs.

The Court employs a two-step process[13] in determining whether to apply

---

[13] "Since Chevron, the Supreme Court has clarified what some refer to as 'step zero' of

Chevron. First, the Court must determine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If Congress is silent or the statute is ambiguous, the Court proceeds to step two: "whether the agency's answer is based on a permissible construction of the statute." Id. at 843. "If so, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator or agency.'" Perez-Zenteno v. U.S. Attorney Gen., 913 F.3d 1301, 1306 (11th Cir. 2019) (citing Chevron, 467 U.S. at 844).

Here, the INA does not define the term "misdemeanor." The Department of Homeland Security has promulgated 8 C.F.R. § 244.1 which defines the term "misdemeanor" based on the offense's possible term of imprisonment. The defendants assert that the TPS regulations "were promulgated following the passage of the TPS statue" and were published "following consideration of many public comments received." Defendants' Motion at 8 n.6 (citing 56 Fed. Reg. 23491-02, 1991 WL 300493 (May 22, 1991)). The plaintiff does not dispute these assertions. Accordingly, the Court defers to section 244.1's reasonable definition of the term "misdemeanor." See Ullah v.

---

Chevron: the threshold requirement that an agency interpretation be of the sort that warrants Chevron analysis in the first instance." Martin v. Soc. Sec. Admin., Comm'r, 903 F.3d 1154, 1159-60 (11th Cir. 2018). "[T]he principles underlying Chevron are only applicable where Congress explicitly or implicitly 'expect[s] the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law,' and the agency actually acts in line with that expectation." Id. (quoting Mead, 533 U.S. at 229). Section 244.1 fills a definitional gap and should be accorded deference under Chevron.

U.S. Attorney Gen., 760 F. App'x 922, 930 n.8 (11th Cir. 2019) (stating "[b]ecause Congress had not defined what constitutes a pattern or practice of persecution, we defer to the BIA's reasonable definition of this term.").

The AAO applied the definition of "misdemeanor" set forth in section 244.1 in determining that the plaintiff's 1985 and 1986 convictions were misdemeanor convictions. The AAO noted that the 1985 charge of refusal to pay fare and the 1986 charges of possession of a suspended driver's license and the charge of possession of marijuana were each punishable by imprisonment for a term of more than five days, but not more than one year. See 2018 CAR at 5-6 (noting that the 1985 charge for refusal to pay fare and the 1986 charge for possession of a suspended driver's license were each punishable by up to 60 days' imprisonment and "possession of 20 grams or less of marijuana [was] a first degree misdemeanor" punishable by "a sentence of imprisonment for up to one year . . . . [a]ccordingly each offense plainly me[t] the regulatory definition of a misdemeanor under 8 C.F.R. § 244.1"). The AAO's application of section 244.1 to the plaintiff's 1985 and 1986 convictions was not arbitrary or capricious and was not an abuse of discretion. Therefore, absent the applicability of the New York Memo or the Florida Memo, the plaintiff's 1985 and 1986 convictions are misdemeanor convictions for TPS purposes.

The next issue for the Court to consider is whether the AAO's determinations that the New York Memo and the Florida Memo did not apply to the plaintiff's 1985 and 1986 convictions were arbitrary and capricious.

31

**B.     Applicability of the New York Memo and the Florida Memo to the Plaintiff's Convictions**

    **i.     Deference under <u>Skidmore</u>**

The defendants argue that "both the New York and Florida Memos, and USCIS and the AAO's decisions applying those memos, should be accorded deference under <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)." Defendants' Reply at 7. The plaintiff does not address this argument.

Agency rules, interpretations and opinions which do not warrant deference under <u>Chevron</u>, may nonetheless warrant a lower level of deference under <u>Skidmore</u>. The Supreme Court has noted that an "agency's policy statements, embodied in its compliance manual and internal directives . . . reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance" and "are entitled to a measure of respect under the less deferential <u>Skidmore</u> standard." <u>Fed. Exp. Corp. v. Holowecki</u>, 552 U.S. 389, 399 (2008) (citations and internal quotation marks omitted). Under <u>Skidmore</u>, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140.

Here, the agency interpretations embodied in the New York Memo and the Florida Memo have been in place since January 17, 2010 and January 21, 2011, respectively. The record does not show that they have been inconsistently interpreted since that time. The Court further finds that the analysis employed by the New York Memo and the Florida Memo is well-reasoned and the justifications provided for treating

some offenses -- which would otherwise meet the definition of a "misdemeanor" -- as non-qualifying offenses are valid. Accordingly, the New York Memo and the Florida Memo are entitled to deference under Skidmore.

As to the decisions of the USCIS and the AAO, the defendants note that "[t]he Eleventh Circuit has previously deferred under Skidmore to USCIS decisions that are consistent with the statute." Defendants' Motion at 10 (citing Serrano v. U.S. Att'y Gen., 655 F.3d 1260, 1265 (11th Cir. 2011)). Under Skidmore, the deference given to informal agency interpretations will "vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." United States v. Mead Corp., 533 U.S. 218, 228 (2001).

The Court finds that the decisions of the AAO and the USCIS are entitled to deference under Skidmore. See All Bright Sanitation of Colorado, Inc. v. U.S. Citizenship & Immigration Servs., No. 10-CV-21808-SCOLA, 2012 WL 3962900, at *6 (S.D. Fla. Sept. 11, 2012) (applying Skidmore deference to "Agency's denial of [plaintiff]'s application" where "[t]he decision [was] geared only to the facts presented, [did] not purport to bind parties beyond [the plaintiff and his company], and [did] not rely upon prior decisions or interpretations of the regulations at issue on the key points of decision" and "[did] not bear any indicia of formal agency rulemaking or adjudication."). Thus, the USCIS and AAO's decisions concerning the denial of the plaintiff's TPS "must be evaluated based upon [their] overarching 'power to persuade,' considered in light of '[the] writer[s'] thoroughness, logic, and expertness, [their] fit with prior interpretations,

33

and any other sources of weight' that may apply." Id. (quoting Mead, 533 U.S. at 235).

The Court now turns to whether the USCIS/AAO's refusal to apply the New York Memo and the Florida Memo to the plaintiff's 1985 and 1986 misdemeanor convictions was arbitrary and capricious.

ii.   **New York Memo**

The plaintiff seeks to apply the New York Memo to his 1985 conviction for refusal to pay fare. See Plaintiff's Motion at 16-17; Plaintiff's Response at 4-5.

The New York Memo provides that certain New York violations,[14] which would otherwise qualify as "misdemeanors" under 8 C.F.R. part 244, should nonetheless be excluded from consideration in determining TPS eligibility. 2014 CAR at 432. The New York Memo explains that these "New York violations . . . are not considered 'crimes' under state law, do not constitute misdemeanors or felonies, and may not be punished by more than 15 days of imprisonment." See N.Y. PENAL LAW, § 10.00(2)-(4) and (6); N.Y. VEH. & TRAF. LAW §§ 155, 1800(b)." Id. at 431 n.1. The underlying basis for the New York Memo is the Department of Homeland Security's "determin[ation] that deeming such New York violations as disqualifying an individual for TPS would be in tension with the humanitarian purpose of the TPS program and would lead to incongruous results." Id. at 432.

The AAO determined that the New York Memo did not apply to the plaintiff's 1985 conviction for refusal to pay fare. The AAO noted that the New York Memo

---

[14] The New York Memo also applies to "certain minor New York traffic infractions" which "do not satisfy the requirements for a criminal 'conviction'" under 8 C.F.R. part 244, "and thus cannot lawfully constitute 'misdemeanors.'" 2014 CAR at 432.

considered both the state's classification of an offense and the punishment prescribed. 2018 CAR at 7. In examining these two factors, the AAO noted that the New York Penal Code classified crimes as felonies, misdemeanors and violations. The AAO further noted that the "maximum possible sentence" for violations "was considerably less than the maximum sentence for a misdemeanor." Id. at 7. The AAO observed that unlike New York law, "the Florida statutes do not reflect the same degree of distinction in classification or severity of sanction between offenses defined as misdemeanors, and those that are established by municipal or county ordinances." Id. at 8. In Florida, the punishment prescribed for a county ordinance violation – up to 60 days imprisonment, a fine not exceeding $500 or both – was the same as a second degree misdemeanor. Id. at 9. The AAO thus "conclude[d] that the State [of Florida] neither classifie[d] nor consider[ed] ordinance violations as less severe than those offenses it ha[d] designated as misdemeanors (even if those misdemeanors are in the second degree)." Id. For this reason the AAO determined that the plaintiff had failed to show that his 1985 conviction for refusal to pay fare should be excluded under the New York Memo.

The plaintiff argues that treating his 1985 conviction for refusal to pay fare as a misdemeanor for TPS purposes is incompatible with the stated purpose of the New York Memo:

> The rationale for the [New York Memo] is that "deeming such New York violations as disqualifying an individual for TPS would be in [tension] with the humanitarian purpose of the TPS program and would lead to incongruous results." Mejia's turnstile-jumping violation certainly would qualify as a "minor offense" under the [New York Memo]. It is as much "an incongruous result[ ]" to disqualify Mejia for TPS based on his having jumped a Miami Metrorail turnstile in 1985 as it is to deny eligibility for individuals found guilty of "loitering" or "trespassing" in New York.

Plaintiff's Motion at 16 (citation omitted). The plaintiff asserts that the Department of Homeland Security is acting arbitrarily because there is no rational basis for treating the plaintiff's 1985 conviction for refusal to pay far differently from a similar offense under New York law:

> The Miami-Dade County ordinance under which Mr. Mejia was charged makes it unlawful merely "to refuse to pay the established fare, evade payment of fare, or enter through rear doors or emergency exits of any mass transit vehicle, guideway or facility." MDCO § 30D-4(21). Similarly, New York City's administrative transit regulation provides "[n]o person shall use or enter upon the facilities ... or conveyances of the [Port] Authority ... without the payment of the fare ... or ... for purposes of gaining entry into a facility, proceed over or under any turnstile or otherwise proceed in any other unauthorized manner through an exit gate or through or past any other point at which a fare is required or collected." 21 NYCRR § 1050.4.

Plaintiff's Response at 5.

The defendants argue that the Court should not "guess as to what charge [the plaintiff] would have been convicted of (if any) if the geographical location of his crime had been New York City instead of Miami." Defendants' Motion at 11-12 (noting that the plaintiff could have been charged with "a Class A misdemeanor in New York punishable by up to one-year incarceration, and a TPS misdemeanor."). The defendants note that "[t]he New York Memo's explicit focus on N.Y. Penal Law § 10.00(3)'s reference to 'fifteen days imprisonment' or less was a critical factor in [the Department of Homeland Security]'s determination finding New York violations do not bar TPS eligibility." Defendants' Motion at 11. The defendants state that this focus is consistent with 8 C.F.R. 244.1 which defines disqualifying misdemeanors by the maximum possible term of imprisonment. Defendants' Reply at 7. The defendants also note that this approach promotes uniformity: "defining TPS-barring crimes in terms of the maximum

36

jail or prison term is the closest to uniform application of the statute possible, given the several states' varying definitions and classifications of their criminal offenses." Defendants' Motion at 12-13. Lastly, the defendants observe that applying the New York Memo based solely on "a state's nonbinding classification of its own offenses" would result in the exclusion of serious offenses. Id. at 13 ("applying the New York Memo to exclude all Florida municipal and county ordinance violations – would carve out several serious misdemeanor crimes based solely on whether the defendants were charged under local ordinance or Florida state code provisions. These would include such ordinance violations as bombings, possession of deadly weapons, and certain controlled substance offences.").

The AAO's refusal to apply the New York Memo to the plaintiff's 1985 conviction for refusal to pay fare is not arbitrary and capricious. The AAO approach in examining the plaintiff's 1985 conviction for refusal to pay fare is consistent with the New York Memo. The AAO noted that New York law recognized clear distinctions between offenses classified as misdemeanors and those classified as violations. 2018 CAR at 7. The AAO also noted that the New York Memo "[took into] account the maximum length of the sentence for a violation, noting that it [was] much less than those for misdemeanors." Id. at 8. By contrast, the AAO noted that "[t]he Florida statutes do not reflect the same degree or distinction in classification or severity or sanction between offenses defined as misdemeanors and those that are established by municipal or county ordinance . . . ." Id.

There is some disagreement between the courts on the issue of whether local

ordinances qualify as misdemeanors or even criminal violations under Florida law. See, e.g., Pridgen v. City of Auburndale, 430 So. 2d 967, 968 (Fla. 2d DCA 1983) (stating that "a municipal ordinance violation is not a criminal violation."); City of Fort Lauderdale v. Mattlin, 566 So. 2d 1330, 1332 (Fla. 4th DCA 1990) ("[i]n our judgment, an ordinance violation punishable by incarceration is the equivalent of a misdemeanor for the purpose of applying speedy trial rules."); Cuva v. State, 687 So. 2d 274, 276 (Fla. 5th DCA 1997) (noting that "the supreme court has held that violation of a municipal ordinance is neither a 'crime' nor a 'noncriminal violation' as defined in the Florida Statutes"); Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002) (applying Florida law and stating that "[t]he prospect of incarceration plainly makes violating the horn ordinance a crime."). However, even if the Florida courts were in agreement that local ordinance violations are not misdemeanors, state classifications are not controlling for TPS purposes, nor are these classifications the only factor considered by the New York Memo.

Section 244.1 supplies the definition of a misdemeanor for TPS purposes. The New York memo excluded certain offenses which would otherwise qualify as misdemeanors under 244.1 because New York law treated those offenses as less severe than misdemeanors. 2014 CAR at 431 n.1 (noting that New York violations may not be punished by more than 15 days imprisonment).[15] Florida law treats ordinance violations the same as second degree misdemeanors in terms of the maximum

---

[15] The New York Memo also excluded other offenses which "do not satisfy the requirements for a criminal 'conviction' and thus, [could not] lawfully constitute 'misdemeanors' under INA § 244(c)(2)(B)(i) and 8 C.F.R., part 244." 2014 CAR at 432.

punishment allowed and in terms of the manner in which they are prosecuted. See Fla. Stat. § 125.69(1) (stating that "[v]iolations of county ordinances shall be prosecuted in the same manner as misdemeanors are prosecuted."). The AAO's distinction between those offenses outlined in the New York Memo (which did not constitute misdemeanors and were punished less severely) and the plaintiff's 1985 conviction for refusal to pay fare (which was subject to the same punishment as a second degree misdemeanor) was rationally supported and not arbitrary or capricious.

    **iii.   Florida Memo**

The plaintiff seeks to apply the Florida Memo to his 1986 conviction(s) for possession of a suspended driver's license and possession of marijuana. See Plaintiff's Motion at 12-13; Plaintiff's Response at 2-3.[16]

The Florida Memo starts with the regulatory definition of a misdemeanor, noting that 8 C.F.R. § 244.1 defines a misdemeanor as "a crime committed in the United States" that is "[p]unishable by imprisonment for a term of one year or less, regardless of the term . . . actually served, if any . . .," but does not include "any crime punishable by imprisonment for a maximum term of five days or less . . . ." 2014 CAR at 316. The Florida Memo then states that "a Florida 'no jail' or 'no incarceration' certification, issued pursuant to Rule 3.994 of the Florida Rules of Criminal Procedure, fundamentally

---

[16] Although the AAO addressed the inapplicability of the Florida Memo to both the 1985 and 1986 convictions, 2018 CAR at 9-12, the plaintiff seeks to apply the Florida Memo only to the 1986 conviction(s). See Plaintiff's Motion at 12-13 (arguing that "because the Florida court did not impose a sentence of imprisonment on Mr. Mejia, the 1986 Charges should be excluded from TPS-eligibility consideration under the [Florida Memo].") (emphasis added); Plaintiff's Response at 2-3 (limiting discussion of the Florida Memo to the 1986 conviction(s)).

changes the maximum possible sentence for an offense by removing the possibility of incarceration from that offense." Id. at 317. Thus, "an offense with such a certification, unless withdrawn pursuant to Rule 3.111(b)(1)(C) of the Florida Rules of Criminal Procedure, does not meet the definition of a misdemeanor under 8 C.F.R. § 244.1 because it would not constitute an offense punishable by imprisonment." Id.

The AAO determined that the Florida Memo did not apply to the plaintiff's 1985 and 1986 convictions because the plaintiff had failed to show that a "no jail" or "no incarceration" certification had been issued in those proceedings. 2018 CAR at 9-12. The AAO acknowledged that "it [was] unclear whether there was any sort of no-jail certification procedure available at the time of the [plaintiff's] convictions in 1985 and 1986. Id. at 9. The AAO noted that the rule referenced in the Florida Memo, Fla. R. Crim. P. 3.994, was enacted on December 5, 2002 and took effect on January 1, 2003. Id. at 10. The AAO then determined that "[i]f there was no process for obtaining some form of 'no jail certification that took imprisonment out of the realm of possible sentences in 1985 and 1986, then the Florida No Jail Certification memo simply [did] not apply to offenses committed at that time for purposes of TPS." Id. If, however, a process did exist, "the [plaintiff] . . . provided no evidence that the trial judge employed such a procedure in connection with [his] 1985 and 1986 charges." Id.

The AAO acknowledged that the record concerning the plaintiff's 1985 and 1986 convictions were sparse due to Rule 2.075 of the Florida Rules of Judicial Administration which "only mandates the retention of misdemeanor records for five years." 2018 CAR at 11. Nonetheless, the AAO rejected the plaintiff's argument that

because the available records did not show that the plaintiff was represented by counsel or that he waived his right to counsel, the trial court could not have imposed a sentence of imprisonment:

> The [plaintiff] . . . has produced no evidence that he lacked counsel during either proceeding, much less any specific reason why this would be the case, i.e., that a no-jail certification was entered or that he waived counsel. In any event, he has not met his burden to show that his convictions were not ones for which he could have been imprisoned, and hence not misdemeanors for TPS purposes.

Id. (footnote omitted). The AAO also rejected the plaintiff's argument that because he was sentenced to credit for time served, with respected to his 1986 conviction(s), "a sentence of 'actual' incarceration was not possible." Id. The AAO noted that "it does not follow that a sentence to time served is any indication that additional incarceration was not within a court's powers." Id.

The plaintiff argues that the Florida Memo is applicable to his 1986 conviction(s) because the plaintiff was sentenced to time served and under Florida law "[a] defendant who is incarcerated before disposition and is thereafter 'sentenced' to time served has not been sentenced to incarceration." Plaintiff's Motion at 12 (citing State v. Brown, 995 So. 2d 1034, 1037 (Fla. 4th DCA 2008)).

In the instant case, the plaintiff was charged with possession of a suspended driver's license and possession of marijuana. Both offenses were punishable by a term of imprisonment. The fact that the trial judge ultimately sentenced the plaintiff to time served does not mean the plaintiff was not facing a possible term of imprisonment. Notably, 8 C.F.R. § 244.1 defines a misdemeanor as a crime **"[p]unishable by imprisonment** for a term of one year or less, **regardless of the term**

41

**. . . actually served, if any**." (emphasis added). The linchpin of the Florida Memo is the "no jail" or "no incarceration" certification, because in instances where the trial judge issues such a certification, the defendant is no longer facing possible jail time and thus, in those instances, the charged offense falls outside the definition of a misdemeanor provided by 244.1. The plaintiff has not shown that a term of imprisonment was removed from the realm of possible punishments in his 1986 proceedings for possession of a suspended driver's license and possession of marijuana.

The plaintiff insists that "[u]nder the [Florida Memo], a misdemeanor disposition for which no jail time is imposed is not 'an offense punishable by imprisonment,' such as will render an individual ineligible for TPS." Plaintiff's Response at 3. However, if that were the case, then the Florida Memo's requirement of a "no jail" or "no incarceration" certification would serve no purpose. The Florida Memo would simply instruct TPS adjudicators to consider the ultimate disposition of a case and exclude those convictions where no jail time was meted. Additionally, the plaintiff's reading of the Florida Memo is at odds with section 244.1 which looks at the potential jailtime faced, "regardless of the term . . . actually served, if any." 8 C.F.R. § 244.1 The term "if any" is meant to include those instances where a TPS applicant faced a possible term of imprisonment, but was ultimately not sentenced to any jail time.

The AAO's determination that the Florida Memo did not apply to the plaintiff's convictions was not arbitrary and capricious. The Florida Memo plainly requires the issuance of "a Florida 'no jail' or 'no incarceration' certification, . . . pursuant to Rule 3.994 of the Florida Rules of Criminal Procedure." 2014 CAR at 317. It is the issuance

42

of this certification that "fundamentally changes the maximum possible sentence for an offense by removing the possibility of incarceration from that offense." Id. The plaintiff was not able to produce a certification pursuant Rule 3.994 (the rule had not been enacted at the time of the plaintiff's 1985 and 1986 convictions) or any similar filing which would have removed incarceration as a possible penalty if the plaintiff was convicted. See Plaintiff's Motion at 13 (acknowledging that "the available court records of the 1986 Charges do not reflect a formal declaration by the state court, ahead of [the plaintiff]'s guilty plea, that no jail time would be imposed . . . ."). Because the plaintiff could not meet the requirements of the Florida Memo, the AAO did not act in an arbitrary and capricious manner when it determined that the plaintiff's 1985 and 1986 convictions were not exempt from consideration. 2018 CAR at 11-12.

**C.    The AAO's Determination that the 1986 Charges Resulted in Two Separate Convictions**

The parties also dispute whether the 1986 charges resulted in one or two convictions for TPS eligibility purposes. The Court notes that because the plaintiff's 1985 conviction and one of the plaintiff's 1986 convictions would total two misdemeanor convictions for TPS purposes, the plaintiff is ineligible for TPS regardless of whether the plaintiff's 1986 charges resulted in one conviction or two convictions for TPS purposes. Nonetheless, and for the sake of completeness, the undersigned will address this argument.

At the outset, the plaintiff argues that the doctrine of judicial estoppel prohibits the defendants from now arguing that the 1986 charges resulted in two convictions.

43

Plaintiff's Motion at 15 (stating that "[h]aving taken the position that the 1986 Charges constituted one conviction, the Department cannot change its position to suit its presently perceived litigation needs."). The plaintiff also argues that the determination that the 1986 charges resulted in only one conviction is the law-of-the-case. Id.; Plaintiff's Response at 4 (stating that "the fact that Mr. Mejia has two, not three, convictions has now become the law of the case.").

The defendants argue that these doctrines are inapplicable here. The defendants cite to numerous instances in the administrative record where the USCIS referred to the 1986 charges as two separate convictions. See Defendants' Motion at 17-18. The defendants further argue that the District Court and the Eleventh Circuit's use of word "conviction" in the singular form does not establish that either court made a ruling on whether the 1986 charges resulted in one conviction or two convictions:

> neither this Court nor the Eleventh Circuit discussed, much less definitively determined, the legal question of whether 8 U.S.C. § 1227(a)(2)(A)(ii) – a **deportability** provision regarding multiple convictions for crimes of moral turpitude arising out of a single scheme of criminal misconduct – applies to TPS eligibility, even assuming the facts could demonstrate such a "single scheme" if this were a deportation case.

Id. at 18 (emphasis in original).

The doctrine of judicial estoppel "is invoked at a court's discretion" and provides that "'a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" Andreu v. HP Inc., 272 F. Supp. 3d 1329, 1335 (S.D. Fla. 2017) (quoting Ajaka v. BrooksAmerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006)). The doctrine of judicial estoppel is inapplicable here as demonstrated by the numerous instances in the record where the

44

defendants referred to the 1986 convictions as two convictions.

The law-of-the-case doctrine is also inapplicable here. Under this doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir. 1990) (per curiam) (quotation omitted). Leaving aside the question of whether the appeal arising from Case No. 08-20273-CIV-KING can be considered the "same case" as the instant case, the Eleventh Circuit did not make a factual finding or a legal conclusion on whether the 1986 charges resulted in one conviction or two convictions for TPS purposes. The issue before the Eleventh Circuit was "whether a guilty plea and a finding of guilt, with a sentence of time served, qualifie[d] as a 'conviction' under 8 U.S.C. § 1101(a)(48)," Mejia Rodriguez, 629 F.3d at 1225, not whether it resulted in one or two convictions. The law of the case doctrine is "limited to issues actually decided by the appellate court" and "things decided by necessary implication as well as those decided explicitly." Lebron v. Sec'y of Fla. Dep't of Children & Families, 772 F.3d 1352, 1360 (11th Cir. 2014) (citations omitted). "[D]iscussion in dicta is neither the law of the case nor binding precedent." Id. (citation omitted). Here, the Eleventh Circuit's use of the word "conviction" in the singular form is, at best, dicta and had no bearing on the issue that was decided. It made no difference to the Eleventh Circuit's holding whether the 1986 charges resulted in one conviction or two convictions. At issue was whether the 1986 charges resulted in a conviction at all. Mejia Rodriguez, 629 F.3d at 1225 (stating "[w]e must decide whether this 1986 plea satisfies the definition of 'conviction.'").

As noted above, the AAO determined that the plaintiff's 1986 charges resulted in two convictions. The AAO rejected the plaintiff's argument that because the 1986 charges arose from a single scheme it should only count as one conviction. 2018 CAR at 5. The AAO explained that the "single scheme" determination applies only to removal proceedings and does not apply to TPS. Id. The INA states that:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, **not arising out of a single scheme of criminal misconduct**, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis added). By contrast, the regulation governing TPS has not such limitation:

> An alien is ineligible for Temporary Protected Status if the alien:
>
> (a) Has been convicted of any felony **or two or more misdemeanors**, as defined in § 244.1, committed in the United States, or
>
> (b) Is an alien described in section 208(b)(2)(A) of the Act.

8 C.F.R. § 244.4 The AAO's determination is based upon the plain language of the statute and regulation. The plaintiff has failed to show that the AAO's conclusion that the plaintiff's 1986 charges resulted in two convictions was arbitrary and capricious.

## D.    Drug Related Inadmissibility

As a separate ground for denying TPS to the plaintiff, the AAO found that the plaintiff was inadmissible due to a drug-related offense, the 1986 conviction for possession of 20 grams or less of marijuana. 2018 CAR at 15. Although the AAO found that this ground was waivable, it noted that the plaintiff did not seek a waiver. Id. Accordingly, it found that the plaintiff was disqualified from obtaining TPS on this ground.

As noted above, the parties dispute whether this ground for TPS ineligibility is properly before the Court. See Plaintiff's Response at 6 (noting that the plaintiff "has not sought discretionary waiver of the application of 8 U.S.C. § 1182(a)(2)(A)(i)(II) in his pleadings."); id. at 7 (stating that "the Department arguing that Plaintiff has waived any challenge to the application of 8 U.S.C. § 1182(a)(2)(A)(i)(II) is inappropriately raised in response to Plaintiff's Motion for Summary Judgment."); Defendants' Reply at 3 (stating that the plaintiff "has been on notice of the ground of inadmissibility that he now seeks to waive since at least 2007, and the availability of the waiver for that ground of inadmissibility prior to filing this suit."). The parties also dispute whether a remand would be futile.

Because the Court finds that the plaintiff is ineligible for TPS based on his 1985 and 1986 misdemeanor convictions, it is not necessary for the Court to decide whether the plaintiff waived his challenge to the AAO's determination that his 1986 conviction for possession of marijuana renders him ineligible for TPS or whether a remand would be futile.

## **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 32, 9/20/18) is **DENIED** and the Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment (DE# 33, 10/11/18) is **GRANTED**.

The Court will separately enter a judgment in accordance with this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this _22_ day of May, 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE